**METHODIST HEALTHCARE–
JACKSON HOSPITAL,**

v.

**JACKSON–MADISON COUNTY
GENERAL HOSPITAL
DISTRICT, et al.**

Court of Appeals of Tennessee,
Western Section, at Nashville.

March 18, 2003 Session.

May 22, 2003.

Dan H. Elrod, G. Brian Jackson, David L. Johnson, Nashville, For Appellant, Jackson–Madison County General Hospital District.

J. Richard Lodge, Jr., Robert E. Cooper, Jr., W. Brantley Phillips, Jr., Nashville, For Appellee, Methodist Healthcare–Jackson Hospital.

## OPINION

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY KIRBY LILLARD, J., joined.

Respondent hospital filed petition for writ of certiorari and writ of supersedeas in trial court and also filed a request for contested case proceeding before administrative law judge, challenging administrative agency's issuance of certificate of need to petitioner hospital. Respondent challenged validity of certificate of need, citing the following procedural errors: (1) T.C.A. § 68–11–108(e) did not prohibit agency from reconsidering its initial vote in favor of certificate of need application, and that decision to ultimately issue certificate was arbitrary, capricious, and unlawful; and (2) participating agency member had a disqualifying conflict of interest that required member to recuse himself prior to vote on petitioner's certificate of need application. Trial court dismissed respondent's petition on grounds that respondent failed to exhaust available administrative remedies. Respondent appealed. While appeal was pending, administrative law judge, in the contested case hearing, granted summary judgment in favor of respondent, finding that T.C.A. § 68–11–108(e) prohibits reconsideration of an agency's decision, but not a vote, and also because a member had disqualifying conflict of interest that required him to recuse himself from the vote and proceedings in accordance with agency's guidelines. Respondent voluntarily dismissed appeal of trial court's denial of certiorari petition, and court of appeals upheld dismissal. Petitioner appealed administrative law judge's Order. Trial court reversed, finding that the administrative law judge was without jurisdiction to consider the same issues pending on appeal before the appellate court, and that a genuine issue of fact existed as to whether the respondent waived its right to object to the member's conflict of interest. Respondent appeals. We vacate the order of the trial court and remand.

This case is before the court for the second time. Petitioner Methodist Healthcare–Jackson Hospital ("Methodist")[1] is a "non-profit, church-related healthcare provider that operates a hospital in Jackson, Tennessee." Respondent Jackson–Madison County General Hospital District ("Jackson–Madison") is a governmental entity responsible for the operation of a competing hospital in Jackson. Respondent Tennessee Health Facilities Commission ("Commission") is a state agency charged with exercising regulatory control over health care facilities in Tennessee.[2]

---

1. This Court granted Methodist's Motion to Substitute Party, substituting Jackson Tennessee Hospital Company, L.L.C. d/b/a Regional Hospital of Jackson for petitioner. However, for the sake of convenience and continuity, we will continue to refer to the petitioning party as Methodist.

2. The Commission elected to forego submission of an appellate brief in this case pursuant to T.R.A.P. 29 and 35.

The first appeal in this case was addressed in an opinion filed November 28, 2001. In the case styled *Jackson–Madison County Gen. Hosp. Dist. v. Tennessee Health Facilities Comm'n,* No. M1999–02804–COA–R3–CV, 2001 WL 1504745, at * 4 (Tenn.Ct.App. Nov.28, 2001), the Tennessee Court of Appeals, Middle Section, considered the sole issue of whether Jackson–Madison was entitled to dismiss its appeal of the trial court's dismissal of respondent's Petition for Writ of Certiorari, under T.R.A.P. 15(a). The court of appeals affirmed the trial court's December 16, 1998 Order dismissing Jackson–Madison's petition, and granted Jackson–Madison's Rule 15(a) motion to dismiss its appeal. *Id.* at * 8. The facts in *Jackson–Madison County* are identical to those before this Court, and we therefore quote at length from the Middle Section's opinion in providing the factual background for the case at bar:

> Sometime in 1998, Methodist Healthcare–Jackson Hospital ("Methodist Healthcare") applied to the Tennessee Health Facilities Commission for a certificate of need to undertake a $20,355,810 expansion of its facility for the purpose of initiating neonatal intensive care and open heart surgery services. On September 11, 1998, Jackson–Madison County General Hospital District ("Jackson–Madison County") filed written objections to Methodist Healthcare's application asserting that the expanded services were not needed and would duplicate services it was already providing.

> The Commission took up Methodist Healthcare's application at its September 23, 1998 meeting. After presentations from both sides, the Commission initially decided by a six to five vote to grant Methodist Healthcare's application. Following a recess, the commission member who had made the motion

to grant Methodist Healthcare's application moved to reconsider the vote. The Commission adopted the motion by a vote of six to five. Thereafter, the Commission, by a six to five vote, denied Methodist Healthcare's application for a certificate of need, finding that the proposed expansion was neither needed nor economically feasible and that it would not contribute to the development of adequate and effective healthcare in the area.

Methodist Healthcare's narrow defeat raised questions about the propriety of the Commission's reconsideration of its initial decision. Even though the Commission had followed a similar procedure in earlier hearings, some questioned whether its second vote was inconsistent with Tenn.Code Ann. § 68–11–108(e) (Supp.2000). Accordingly, both the Commission and a state senator requested the Attorney General and Reporter to render a formal opinion regarding whether the Commission's reconsideration of its decision regarding Methodist Healthcare's application was inconsistent with Tenn.Code Ann. § 68–11–108(e). On October 1, 1998, the Attorney General issued an opinion that the Commission did not have the authority to reconsider its initial decision and that all the Commission's actions after the initial vote were of no effect.

On October 23, 1998, Jackson–Madison County filed a petition for writ of certiorari and writ of supersedeas in the Circuit Court for Davidson County seeking judicial review of the Commission's proceedings on two grounds. First, Jackson–Madison County asserted that one of the Commission members who had voted in favor of granting Methodist Healthcare's application for a certificate of need should have recused himself because his company had a "direct finan-

cial relationship" with both Jackson–Madison County and Methodist Healthcare. Second, it asserted that the announced intention of the Commission's staff to issue the certificate of need notwithstanding the Commission's decision to deny it was arbitrary, capricious, and unlawful.

On October 28, 1998, the circuit court transferred the petition to the Chancery Court for Davidson County, and one of the chancellors signed a fiat directing the clerk and master to issue the writ of certiorari directing the Commission to forward the record of its proceedings involving Methodist Healthcare's application for a certificate of need to the court. However, the trial court did not issue a writ of supersedeas that would have prevented the Commission from issuing the certificate of need to Methodist Healthcare.

The Commission met later in the day on October 28, 1998. During this meeting, the Commission's general counsel informed the Commission of the actions taken by the trial court earlier in the day and explained her understanding of the significance of the Attorney General's October 1, 1998 opinion. She stated that the Attorney General had "effectively reversed" the Commission's September 23, 1998 decision to deny Methodist Healthcare's application for a certificate of need. She also admonished the Commission to "conform your conduct with the advice of the Attorney General" and warned that the "Commission will have to face some sort of legal action if we choose . . . to ignore [the Attorney General's opinion]." The general counsel also advised the Commission that neither she nor the Attorney General would represent the Commission or the individual commissioners if they disregarded the Attorney General's opinion and that they would be re-

quired to retain their own lawyers when Methodist Healthcare filed suit. With this "advice" ringing in their ears, the commissioners decided to "concur" with the Attorney General's opinion. Thereupon, the general counsel informed the Commission that Methodist Healthcare's certificate of need would be signed and issued forthwith.

Both the Commission and Methodist Healthcare later filed motions to dismiss Jackson–Madison County's petition on the ground that Jackson–Madison County had adequate remedies under the Uniform Administrative Procedures Act that it had failed to exhaust. On December 16, 1998, the trial court entered an order dismissing Jackson–Madison County's petition for writ of certiorari with prejudice on the ground that Jackson–Madison County had failed to exhaust its administrative remedies under the Uniform Administrative Procedures Act. Jackson–Madison County filed a timely appeal with this court.

Because the trial court had not issued a writ of supersedeas, the proceedings before the Commission did not abate while Jackson–Madison County's appeal was pending. Both parties had requested a contested case hearing in accordance with Tenn.Code Ann. § 68–11–109(a)(1). Accordingly, on January 7, 2001, Jackson–Madison County filed a motion for summary judgment with the administrative law judge assigned to conduct the contested case hearing. In its motion, Jackson–Madison County asserted that Methodist Healthcare's certificate of need was invalid (1) because Tenn.Code Ann. § 68–11–108(e) did not prevent the Commission from reconsidering and denying Methodist Healthcare's application for a certificate of need and (2) because one of the commissioners who voted to grant Methodist

Healthcare's application should have recused himself because of his direct financial relationship with both parties.

Both Methodist Healthcare and the Commission objected to the administrative law judge's consideration of Jackson–Madison County's motion for summary judgment. They argued that the administrative law judge lacked jurisdiction to address the motion because it was based on the same grounds as Jackson–Madison County's petition for writ of certiorari. The administrative law judge decided to proceed with the motion. On September 24, 2001, the administrative law judge filed an order concluding that Jackson–Madison County was, as a matter of law, entitled to a judgment vacating the certificate of need issued to Methodist Healthcare. Based on the undisputed evidence, the administrative law judge found that one of the commissioners who voted to grant the certificate of need "had a pecuniary interest in the proceedings sufficient to necessitate his disqualification." The administrative law judge also found that Tenn.Code Ann. § 68–11–108(e) did not prohibit the Commission from reconsidering its initial vote to approve Methodist Healthcare's application because, at the time, the Commission had not yet finally "decided" whether to approve or deny the application.

With the favorable order by the administrative law judge in hand, Jackson–Madison County has now filed a Tenn. R.App. P. 15(a) motion to dismiss its appeal from the trial court's December 16, 1998 order. Methodist Healthcare opposes the motion, asserting that the administrative law judge's September 24, 2001 order is "ripe for appeal and reversal" and that "fairness and equity" should prevent Jackson–Madison County from being allowed "to 'whipsaw'

Methodist . . . through the simultaneous use of competing forums."

*Id.* at * 1–* 3.

On October 30, 2001, Methodist filed a Petition for Judicial Review of the administrative law judge's ("ALJ") September 24, 2001 Administrative Order. Methodist's petition was premised on the assertion that the ALJ erred in granting summary judgment in favor of Jackson–Madison because the alleged procedural error issues were pending before the court of appeals. Methodist further asserted that the ALJ's decision improperly rejected and overruled the Attorney General's opinion.

On December 11, 2001, Methodist filed a motion to stay the ALJ's September 24 Order granting Jackson–Madison summary judgment, pending judicial review. In a Memorandum filed June 17, 2002, the trial court found "that the "procedural errors" considered by the ALJ in Jackson–Madison County's motion for summary judgment were pending in the Court of Appeals and, therefore, the ALJ lacked jurisdiction to consider these "procedural errors"." Additionally, the court determined that summary judgment was improper with regard to the conflict of interest issue raised by Jackson–Madison as a genuine issue of material fact existed concerning "whether Jackson–Madison County waived its right to object to Commissioner Mann's alleged conflict of interest." In an Order filed June 26, 2002, the court concluded:

Based upon the parties' written submissions, oral argument, the administrative record and the relevant authority, the Court **FINDS** that Methodist's Petition is well taken and should be **GRANTED** for the reasons set out in the related Memorandum Opinion. Said Memorandum Opinion was filed on June 17, 2002.

Accordingly, it is hereby **ORDERED** that Methodist's Petition for Judicial Review of Administrative Order is **GRANTED,** and that the [Commission's] September 24th Order at issue in said petition is hereby **REVERSED** and **VACATED.** This case is **REMANDED** to the [Commission] for further proceedings consistent with this Order and the Court's related Memorandum Opinion.

Jackson–Madison appeals, presenting for review the following issues as quoted from its brief:

1. Did the Chancery Court err in finding that the Tennessee Health Facilities Commission ("Commission") was deprived of jurisdiction to issue a final order in this case by an appeal pending before this Court, even though no stay of the administrative proceedings was ever requested or entered?

2. Did the Commission properly conclude in its final order that the Commission could reconsider its own votes in a manner consistent with ordinary principles of parliamentary procedure and the customary practices of the Commission?

3. Did the Commission properly conclude in its final order that a member of the Commission had a disqualifying pecuniary conflict of interest affirmatively requiring him to recuse himself from participation in the proceedings, and that his failure to do so voided the Commission's initial vote to grant a Certificate of need to the appellee?

Under the Tennessee Uniform Administrative Procedures Act ("UAPA"), a reviewing court may affirm the decision of an administrative agency or remand the case for further proceedings. *See* T.C.A. § 4–5–322(h) (2002). T.C.A. § 4–5–322(h) (2002) provides:

The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the ad-ministrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The scope of review in this Court is the same as in the trial court, to review findings of fact of the administrative agency upon the standard of substantial and material evidence. *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn.Ct.App. 1999) (citing *De Priest v. Puett,* 669 S.W.2d 669 (Tenn.Ct.App.1984)). What amounts to "substantial and material" evidence provided for in T.C.A. § 4–5–322(h) is not clearly defined. *Gluck,* 15 S.W.3d at 490. It is generally understood that "it requires something less than a preponderance of the evidence, (citations omitted) but more than a scintilla or glimmer." *Id.* (citing *Wayne County v. Tennessee Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (1988)).

 While this Court may consider evidence in the record that detracts from its weight, the court is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. *Gluck,* 15 S.W.3d at 490 (citing T.C.A. § 4–5–322(h); *Pace v. Garbage Dis-*

*posal Dist.,* 54 Tenn.App. 263, 266, 390 S.W.2d 461, 463 (1965)). The evidence before the tribunal must be such relevant evidence as a reasonable mind might accept as adequate to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration. *Gluck,* 15 S.W.3d at 490 (citing *Pace,* 54 Tenn.App. at 267, 390 S.W.2d at 463).

### I.

■ Before addressing the substantive issues presented by Jackson–Madison, this court must first consider the procedural question of whether the ALJ, sitting alone, had jurisdiction to enter a final order in this case while the asserted "procedural errors" were allegedly pending before the court of appeals "for a determination on the merits as a part of a prior appeal brought by [Jackson–Madison]." Methodist contends that the ALJ lacked jurisdiction to enter a final order in this case because the conflict of interest and reconsideration issues were simultaneously pending before both the ALJ and the court of appeals.

To reiterate, Jackson–Madison filed a petition for writ of certiorari and writ of supersedeas in the trial court on October 23, 1998. Jackson–Madison's petition sought judicial review of the Commission's September 1998 proceedings, alleging that Commissioner Charles Mann ("Mann") had a direct conflict of interest that required Mann to recuse himself from the vote on Methodist's CON application, and that the Commission had a right to reconsider its initial vote granting Methodist's CON application. The chancery court signed a fiat directing the clerk and master to issue the writ of certiorari. Methodist and the Commission responded to the trial court's decision by filing motions to dismiss Jackson–Madison's petition on the ground that "Jackson–Madison County had adequate remedies under the Uniform Administrative Procedures Act that it had failed to exhaust." *See Jackson–Madison County Gen. Hosp. Dist. v. Tennessee Health Facilities Comm'n,* No. M1999–02804–COA–R3–CV, 2001 WL 1504745, at * 3 (Tenn.Ct. App. Nov.28, 2001).[3]

Around the time that Jackson–Madison filed its petition for writ of certiorari, the parties also requested a contested case hearing, to be held before the ALJ in accordance with T.C.A. § 68–11–109(a)(1). On January 27, 2001, Jackson–Madison filed a Motion for Summary Judgment in the contested case proceeding, asserting that Methodist's CON was invalid for the following reasons:

(1) [B]ecause Tenn.Code Ann. § 68–11–108(e) did not prevent the Commission from reconsidering and denying Methodist Healthcare's application for a certificate of need and (2) because one of the commissioners who voted to grant Methodist Healthcare's application should have recused himself because of his direct financial relationship with both parties.

*See id.*

Based on the above procedural facts, Methodist alleges that the conflict of interest and reconsideration issues ("procedural errors") were simultaneously pending before the court of appeals and the ALJ.

---

3. The court of appeals noted:
 On December 16, 1998, the trial court entered an order dismissing Jackson–Madison County's petition for writ of certiorari with prejudice *on the ground that Jackson–Madison County had failed to exhaust its ad-**ministrative remedies under the Uniform Administrative Procedures Act.** Jackson–Madison County filed a timely appeal with [the court of appeals].
 *Id.* (emphasis added).

Arguing that the perfection of an appeal divests a tribunal or lower court of jurisdiction or further authority to act absent leave of the appellate court, Methodist contends that the ALJ lacked jurisdiction to issue a final order on the procedural errors questions.

Although the trial court's order dismissing Jackson–Madison's petition is not included in the record, we note the court of appeals' recitation of the procedural facts in *Jackson–Madison County* as support for the conclusion that the trial court did not dismiss the petition on the conflict of interest and reconsideration issues. In fact, the court of appeals noted that the trial court never reached the substantive issues regarding disqualification and reconsideration. Rather, the trial court based its dismissal solely on the finding that Jackson–Madison failed to exhaust its administrative remedies. Jackson–Madison's appeal of the trial court's dismissal therefore only involved the question of whether the trial court erred in determining that Jackson–Madison failed to exhaust its administrative remedies, and did not address or raise the substantive conflict of interest and reconsideration issues.

Jackson–Madison's motion before the ALJ in the contested case hearing, in contrast, specifically asserted the procedural errors issues. In granting Jackson–Madison's Motion for Summary Judgment, the ALJ entered a final judgment on both procedural errors issues, finding in favor of Jackson–Madison as to both the conflict of interest and reconsideration questions. Therefore, recognizing that the separate proceedings initiated before the court of appeals and the ALJ involved distinct and unrelated issues, we find that the ALJ was not deprived of jurisdiction to enter a final order on the procedural errors issues.

Our holding is further supported by the court of appeals' decision in *Jackson–Mad-ison County*. In *Jackson–Madison County*, the court of appeals noted that the trial court properly dismissed Jackson–Madison's petition for writ of certiorari and held that Jackson–Madison was entitled to dismiss its appeal of the trial court's decision to dismiss the petition. As the basis for its conclusion, the court reasoned that dismissal of the appeal would not prejudice or impair Methodist's rights, stating:

> Affirming the trial court's December 16, 1998 order and dismissing this appeal will leave undisturbed the trial court's decision that it had improvidently granted the writ of certiorari because Jackson–Madison County had another adequate appellate remedy. It goes no further because the trial court never reached the substantive issues regarding the disqualification of one of the Commission members or the Commission's ability to reconsider its decision. Accordingly, dismissing this appeal will not impair Methodist Healthcare's right to challenge the jurisdiction of the administrative law judge or the substantive merits of the decisions in the administrative law judge's September 24, 2001 order.

> \* \* \* \* \* \*

> However, as we have already pointed out, the trial court's December 16, 1998 order, limited as it is to the dismissal of the writ of certiorari it had improvidently granted, has no such preclusive effect. Should Methodist Healthcare decide to continue its efforts to keep its certificate of need afloat, the trial court's December 16, 1998 order will not prevent it from challenging the administrative law judge's jurisdiction to issue the September 24, 2001 order.

*Id.* at \* 6–7.

In reaching its conclusion that Jackson–Madison was entitled to voluntarily dis-

miss its appeal of the trial court's decision on the certiorari petition, the court of appeals suggested that the petition should never have been commenced in the first place.[4] *Id.* at * 7. The court observed that the parties were "fated" to have a contested case hearing as both requested such proceeding upon conclusion of the commission's October 1998 meeting approving issuance of the CON, and offered the following conclusion in a footnote to its opinion:

> We note, however, that the trial court eventually dismissed Jackson–Madison County's petition for writ of certiorari and never issued a writ of supersedeas. Its decisions were correct on both counts because Jackson–Madison County had a specific, statutorily-defined appellate remedy at its disposal when it filed its petition. ***By dismissing the improvidently granted writ of certiorari, the trial court divested itself of its jurisdiction. Neither party requested a stay while this appeal has been pending. Thus, the question of the administrative law judge's authority to consider and decide Jackson–Madison County's motion for summary judgment is not as one-sided as Methodist Healthcare may think.***

*Id.* at * 6 n. 16. (emphasis added).

Although the court of appeals did not rule on the jurisdiction issue, the conclusions and analysis provided by the *Jackson–Madison County* court strongly support a finding that the ALJ did not lack jurisdiction to consider the procedural errors issues. As stated, the court determined that the trial court properly dis-

missed Jackson–Madison's petition for writ of certiorari on the basis that Jackson–Madison failed to exhaust its administrative remedies. Based on this determination, Jackson–Madison would be foreclosed from all available avenues of judicial and administrative remedy in the event that the ALJ was deemed to lack jurisdiction over the matter. Aggrieved parties are entitled to seek redress for their losses, and therefore such a result would be inequitable. Further, because the trial court premised its dismissal of Jackson–Madison's petition solely on the ground that petitioner failed to exhaust its administrative remedies, one can logically conclude that the ALJ would have jurisdiction to hear these issues in the context of a contested case hearing, as a contested case hearing is the statutorily defined administrative remedy pursuant to T.C.A. § 68–11–109 (2001), available to a health care institution challenging the Commission's decision.

Therefore, on the basis of our finding that the separate proceedings before the court of appeals and the ALJ involved consideration of separate and distinct issues, and in light of the court of appeals' decision in *Jackson–Madison County* that Jackson–Madison was entitled to dismiss its appeal, and the reasoning utilized to reach this conclusion, we hold that the ALJ did not lack jurisdiction to examine the reconsideration and conflict of interest issues.

## II.

■ The first substantive issue raised on appeal is the question of whether the ALJ properly concluded in his Final Order

---

4. The court noted:
 While we may agree that Jackson–Madison complicated this proceeding by pursuing a common-law writ of certiorari rather than the other appellate remedies available under Tenn.Code Ann. § 68–11–109, we fail to

understand how permitting Jackson–Madison County to abandon a proceeding that should never have been commenced in the first place prejudices Methodist Healthcare. *Id.*

that the Commission was permitted to reconsider its initial vote approving Methodist's CON application, in accordance with "ordinary principles of parliamentary procedure and the customary practice of the Commission."

In his Final Order of September 24, 2001 granting summary judgment in favor of Jackson–Madison, the ALJ determined that despite the Attorney General's opinion interpreting T.C.A. § 68–11–108(e), the Commission was entitled to reconsider its initial vote approving Methodist's CON application. The ALJ reasoned that the Attorney General erroneously interpreted this statute, as he failed to distinguish between a vote and a final decision of the Commission. The ALJ conceded that T.C.A. § 68–11–108(e) prohibited the Commission from reconsidering a decision, but opined that a decision and a vote are not synonymous. A decision, according to the ALJ, "is not made until the meeting adjourns and written notice of the decision is issued." The ALJ defined the term "decision," and the distinction drawn between a decision and a vote of the Commission, on case law from outside jurisdictions, notably the cases of *In re Application of Alamance Sav. & Loan Asso.*, 53 N.C.App. 326, 280 S.E.2d 748 (1981) and *Hall v. Banking Review Board*, 13 Wis.2d 359, 108 N.W.2d 543 (1961). Since the motion and vote for reconsideration were made before written notice of the Commission's initial vote was issued, the ALJ concluded that the initial vote granting the application was not a "decision," and therefore the prohibitions set forth in T.C.A. § 68–11–108(3) did not apply.

As further support for his decision, the ALJ noted that the Commission has historically interpreted T.C.A. § 68–11–108(e) to permit reconsideration of an initial vote prior to written notice and adjournment of the meeting, citing three specific cases in

which the Commission reconsidered its initial vote on a CON application. In its brief, Jackson–Madison echoes the ALJ's interpretation of the Commission's past "customary practice," and contends that Commission Rule 0720–1–.05(2) permits reconsideration in accordance with accepted rules of parliamentary procedure. Commission Rule 0720–1–.05(2) provides:

> Meetings of the Commission will be under the direction of the Chair, or in the Chair's absence or at his/her request, the Vice–Chair or other designated member. The meetings will be conducted in accordance with accepted rules of parliamentary procedure, as determined by the Chair or acting Chair.

Both the ALJ and Jackson–Madison suggest that *Robert's Rules of Order* is the accepted authority with regard to parliamentary procedure. In his Order, the ALJ pointed to *Robert's Rules of Order* Art. VI § 36 (4th ed.1915), as authorizing reconsideration of a vote prior to written notice or issuance of the decision or adjournment of the meeting.

When interpreting a statute, the role of the Court is to "ascertain and give effect to the legislative intent." *Sharp v. Richardson*, 937 S.W.2d 846, 850 (Tenn. 1996). In the absence of ambiguity, legislative intent is derived from the face of a statute, and the Court may not depart from the "natural and ordinary" meaning of the statute's language. *Westland West Community Ass'n. v. Knox County*, 948 S.W.2d 281, 283 (Tenn.1997).

After examining the record in its entirety, and in light of the applicable statutory authority, we find that the ALJ erred in granting summary judgment in favor of Jackson–Madison on the issue of reconsideration. T.C.A. § 68–11–108(e) (2001) (emphasis added) provides:

The commission's decision to approve or deny an application **shall be final and shall not be reconsidered.** This provision does not limit the right to file a petition for a contested case hearing pursuant to § 68–11–109, nor does it limit the provisions of the Uniform Administrative Procedures Act, complied in title 4, chapter 5, part 3, pertaining to contested case hearings.

Under T.C.A. § 68–11–108(f) (2001):

Written notice of the decision of the commission approving, disapproving, or deferring an application, or parts thereof, shall be transmitted to the applicant, competing applicants, the department of health, the department of mental health and developmental disabilities, and others upon request.

From our reading of the plain language of this statute, we conclude that T.C.A. § 68–11–108(e) prohibits the Commission from reconsidering a decision to approve or deny a CON application. The statute does not distinguish between a vote and a decision of the Commission, and therefore we refuse to read in such a distinction. Further, when read in conjunction with subsection (f), it is apparent that the legislature did not intend to require a vote or decision of the commission to be reduced to writing in order to constitute a final decision. The only written requirement applicable to these subsections is espoused in subsection (f), which provides that "written notice of the decision of the commission" be transmitted to certain specified entities. On this basis, we find that there is no distinction under T.C.A. § 68–11–108(e) between a final vote and a final decision of the Commission. Moreover, we find that, in light of subsection (f), the

Commission's decision does not have to be reduced to writing in order to be final.

■ Our reading of the statute finds support in the Attorney General's Opinion of October 1, 1998.[5] In his opinion, the Attorney General concluded:

It has been suggested that Tenn.Code Ann. § 68–11–108(e) was intended to prevent an applicant or third party from petitioning for a reconsideration, but not to preclude a reconsideration upon motion of a Commission member. It has been reported that, historically, the Commission has entertained motions for reconsideration under *Robert's Rules of Order* and has interpreted Tenn.Code Ann. § 68–11–108(e) to mean that only an applicant or third party cannot petition the Commission for reconsideration. This interpretation is, in the opinion of this Office, in conflict with the language used in the statute.

A basic principle of statutory construction is to ascertain and give effect to the intention and purpose of a legislature. That intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language. *Tuggle v. Allright Parking Systems, Inc.,* 922 S.W.2d 105, 107 (Tenn.1996); *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn.1991). Where the statutory language is plain, clear, and unambiguous, there is no room for interpretation or construction that departs from the words of the statute. *Tuggle,* 922 S.W.2d at 107. The clear, unambiguous language of Tenn.Code Ann. § 68–11–108(e) is that "[t]he Commission's deci-

---

**5.** We note that opinions of the Attorney General are not binding on courts. *See Scott v. Ashland Healthcare Ctr., Inc.,* 49 S.W.3d 281, 287 (Tenn.2001) (quoting *State v. Black,* 897 S.W.2d 680, 683 (Tenn.1995)). Although not binding, Attorney General opinions are entitled to considerable deference. *See id.* (quoting *Black,* 897 S.W.2d at 683).

sion to approve or deny an application ... shall not be reconsidered." The ordinary and plain meaning of the statutory language is that the Commission is precluded from reconsidering its decision—that is, its determination arrived at after consideration—without regard to the origin of such a proposed course of action. The power of an administrative agency must find its source in an express statutory grant of authority. *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.,* 907 S.W.2d 807, 810 (Tenn.1995). Given the language of § 68–11–108(e), the Commission has no authority to reconsider its decision to approve or deny an application for a CON. Thus, it logically follows that the Commission's actions relating to the denial of the CON, taken upon a purported reconsideration of its original approval of the CON, are of no effect.

To briefly address the ALJ's specific findings in support of reconsideration, we begin by noting that the ALJ cites to no case law or statutory authority from Tennessee setting forth the precise guidelines for distinguishing a Commission "vote" from a Commission "decision." While we acknowledge that the North Carolina and Wisconsin cases cited by the ALJ support the distinction drawn, we find that the administrative law from other states "seldom has any value" with regard to interpreting Tennessee administrative law. *See* Kenneth C. Davis, *Administrative Law Treatise* § 1:10 (2d ed. 1978) ("The administrative law of any particular state is vital to any judge or practitioner of that state, but the administrative law of other states seldom has any value; one who has an administrative law problem of one state usually turns to the federal law, seldom to the law of other states, if the law of the one state is inadequate.")

With regard to the ALJ's conclusion that *Robert's Rules of Order* § 36, applicable pursuant to Commission Rule 0720–1–.05(2), authorized the Commission to reconsider its initial vote, we note that there is no evidence in the record to indicate that the Commission's Chairman or acting Chairman determined *Robert's Rules of Order* as the governing authority on parliamentary procedure. The record is devoid of any affidavit, statute, or regulation recognizing *Robert's Rules of Order* as controlling procedural authority.

 Alternatively, we note that even if the Commission was entitled to adopt or follow accepted rules of parliamentary procedure pursuant to Commission Rule 0720–1–.05(2), allowing for reconsideration of an initial vote, the provision contained within T.C.A. § 68–11–108(e) prohibiting reconsideration supersedes the regulation of an administrative agency. Administrative regulations cannot be inconsistent with statutes on the same subject. *Kaylor v. Bradley,* 912 S.W.2d 728, 734 (Tenn.Ct.App.1995). "The powers of [an administrative agency] must be found in the statutes. If they are not there, they are non-existent." *Tennessee–Carolina Transp., Inc. v. Pentecost,* 206 Tenn. 551, 556, 334 S.W.2d 950, 953 (Tenn.1960). Moreover, "[a]dministrative agencies have only such power as is granted them by statute, and any action which is not authorized by the statutes is a nullity." *General Portland, Inc. v. Chattanooga–Hamilton County Air Pollution Control Bd.,* 560 S.W.2d 910, 913 (Tenn.Ct.App.1976) (citations omitted).

As to the ALJ's final conclusion that the Commission traditionally interpreted T.C.A. § 68–11–108(e) as permitting reconsideration of a vote, we note, first, that the Commission's interpretation is erroneously

premised on the theory that a vote is distinct from a decision. Moreover, although an administrative agency's interpretation of its own enabling statute is entitled to weight and deference, this court is hard pressed to find that three separate and unrelated decisions to reconsider an initial vote constitutes a customary or traditional practice of the Commission, especially where no Commission regulation has been cited explicitly granting the Commission the power to reconsider an initial vote. We note further that all of these projects were considered by the Commission prior to the Attorney General's October 1, 1998 opinion.

On the weight of the plain language of the statute, we find that the ALJ erred in granting summary judgment on the basis that Jackson–Madison was entitled to reconsider its initial vote at the September 1998 hearing. We therefore find that the Commission's second vote at the September 23, 1998 hearing denying Methodist's CON application is void.

### III.

■■■ Having determined that the Commission was not entitled to reconsider its initial vote at the September 23, 1998 meeting, we must now consider the issue of whether Commissioner Mann had a disqualifying pecuniary conflict of interest with regard to Methodist's CON application. If such a conflict is deemed to have existed, we must then determine whether Jackson–Madison, as the objecting party, or Commissioner Charles Mann ("Mann"), as the individual possessing the conflict of interest, had the duty to inform the Commission of the conflict and request or initiate recusal.

Mann is the Executive Vice President and a principle owner of Specialty Surgical Instrumentation, Inc. ("SSI"). The record contains undisputed evidence that SSI conducted business with both Jackson–Madison and Methodist prior to the September 1998 vote. According to the Affidavit of Tom Fendley ("Fendley"), Director of Materials Management for Jackson–Madison, Jackson–Madison made several purchases from SSI from June 1997 through September 1998, totaling approximately $34,500.00 in sales. Fendley noted that Mann contacted him directly on behalf of SSI several times for the purpose of soliciting purchases.

In its Supplemental Response to Jackson–Madison's First Set of Interrogatories, Methodist reported that it made purchases totaling approximately $405,093.00 from SSI for the period spanning 1997 through 1998. The record further indicates that Methodist continued to make purchases from SSI through at least 2000.

Commission Rule 0720–1–.02(1) provides:

**CONFLICTS OF INTEREST**

(1) Members. If any matter before the Commission involves any project, transaction, or relationship in which a member or their associated institution or business has a direct or a conflicting interest, the member *shall make known to the Commission that interest and recuse himself/herself from the deliberation and vote,* and join the general public during the proceedings.

(emphasis added).

Based on SSI's extensive business dealings with Methodist, and Mann's "direct business relationship" with petitioner, the ALJ determined that Mann had an "undeniably and patently bold" conflict of interest under Commission Rule 0720–1–.02(1).

From our review of the evidence in the record and the applicable statutory authority and administrative law, we find that the ALJ correctly determined that Mann had a disqualifying pecuniary conflict of inter-

est. Our conclusion is primarily based upon Methodist's admission that it made purchases totaling approximately $405,093.00 from SSI for the period spanning 1997 through 1998. We are also persuaded by the Order of Administrative Law Judge Blair Scoville Morgan, filed on March 18, 2002 in the case of *Mountain States Health Alliance v. Wellmont Health Systems.* In *Mountain States,* the Commission granted Wellmont Health Systems ("Wellmont") a CON. As a participating member of the Commission, Mann voted in favor of the CON. Petitioner Mountain States Health Alliance ("MSHA") opposed issuance of the CON, and filed a Motion for Summary Judgment in a contested case hearing before an ALJ. As part of its summary judgment motion, MSHA alleged that Mann had a disqualifying conflict of interest and, under Commission Rule 0720–1–.02, had an affirmative duty to recuse himself from the proceedings. As in this case, SSI had substantial business interests with regard to both parties.[6]

The ALJ granted MSHA's motion, finding that Mann had a disqualifying conflict of interest.[7] Recognizing that Mann cast the deciding vote in favor of the CON, the ALJ determined that the Commission's vote was void *ab initio,* and therefore vacated the issued CON.

Upon our finding that Mann had a disqualifying conflict of interest with regard to Methodist's CON application, we must now determine whether Mann had an affirmative duty to recuse himself prior to the vote or, in contrast, whether Jackson–

Madison was required to raise a conflict of interest objection at the hearings, demanding recusal.

To reiterate, Commission Rule 0720–1–.02(1) provides that a Commission member with a defined conflict of interest *"shall* make known to the Commission that interest and recuse himself/herself from the deliberation and vote, and join the general public during the proceedings." (emphasis added). By the plain and mandatory language of Commission Rule 0720–1–.02(1), it is evident that Commissioner Mann had an affirmative duty to inform the Commission of his conflict of interest and recuse himself from the deliberation and vote on Methodist's application.

Methodist contends that T.C.A. § 4–5–302, a provision of the UAPA, governs the conflict of interest issue, and not the Commission's rule. T.C.A. § 4–5–302 (1998) provides, in pertinent part:

(a) Any administrative judge, hearing officer or agency member shall be subject to disqualification for bias, prejudice, interest or any other cause provided in this chapter or for any cause for which a judge may be disqualified.

(b) Any party may petition for the disqualification of an administrative judge, hearing officer or agency member promptly after receipt of notice indicating that the individual will serve or, if later, promptly upon discovering facts establishing grounds for disqualification.

(c) A party petitioning for the disqualification of an agency member shall not be

---

6. According to the ALJ's Order, Wellmont bought $456,810.79 in surgical instruments, equipment, and supplies from SSI from 1997 through 2001.

7. In support of its summary judgment motion, MSHA also challenged the Commission's grant of Wellmont's CON application on the grounds that the application contained "nu-

merous false, misleading and erroneous statements concerning the supposed need for Wellmont's project." The ALJ found in favor of MSHA on this second ground, but further acknowledged that Mann's conflict of interest was "entirely dispositive of the issue of whether summary judgment should be granted."

allowed to question the agency member concerning the grounds for disqualification at the hearing or by deposition unless ordered by the administrative judge or hearing officer conducting the hearing and agreed to by the agency member.

(d) The individual whose disqualification is requested shall determine whether to grant the petition, stating facts and reasons for the determination.

Although both statutes address the avenues for disqualifying a Commission member in a contested case proceeding on conflict of interest grounds, we find that the statutes are not inconsistent and that, under the circumstances of this case, Commission Rule 0720-1-.02(1) is controlling. T.C.A. § 4-5-302 provides only that an aggrieved party "may" petition for disqualification of a Commission member upon knowledge of the existing or alleged conflict. Unlike Commission Rule 0720-1-.02(1), T.C.A. § 4-5-302 does not mandate action on behalf of the aggrieved party through inclusion of the term "shall." Commission Rule 0720-1-.02(1) does not conflict with this statute, but rather simply goes one step further in placing the affirmative burden on the Commission member possessing the alleged or potential conflict of interest to reveal said conflict to the administrative agency and to recuse himself from the vote and proceedings. We find no conflict with T.C.A. § 4-5-302, as this statute mandates disqualification of any Commission member with a conflict of interest similar in magnitude to the conflict involved in this case. Both the statute and the rule require disqualification based on conflict of interest, Commission Rule 0720-1-.02(1) simply places the mandatory duty of disclosure and recusal on the Commission member—the party best suited to realize whether such conflict exists.

Our conclusion that Commission Rule 0720-1-.02(1) placed an affirmative duty on Mann to disclose his conflict and recuse himself from the vote and proceeding is supported by the *Mountain States* Order. As stated, the ALJ in *Mountain States* determined that Mann had a disqualifying conflict of interest, thereby rendering the vote void *ab initio*. In his Order, the ALJ explained:

> By its own terms, [0720-1-.02] does not require that a party appearing before the Commission, who is or may be jeopardized by a Commissioner's conflict, must first "request" disqualification of a Commission member, based upon conflict of interest. Because a party that appears before the Commission may not be aware of a Commissioner's conflict of interest at the time of a vote that impacts that party's rights or pecuniary interests, this rule is self-executing in the context of a conflict of interest, placing upon each Commissioner an affirmative duty, *regardless of whether any party to the proceeding requests it,* to disclose at the beginning of the hearing a direct interest or conflict of interest in the matter, and recuse himself/herself from further involvement in the Commission's hearing on the matter, the Commission's deliberation on the CON and the Commission's vote on the CON.

> Because recusal in the context of a conflict of interest is an affirmative duty of the Commission member himself/herself, and because all Commissioners who serve on the Tennessee Health Facilities Commission serve to advance the public policy clearly stated in T.C.A. § 68-11-103, the failure of any party to the proceeding to "object" to a Commissioner's participation in the vote, prior to the vote, is immaterial. There can be no "waiver" of the public's interest in having all votes of the Commission take

place without any member participating who has a conflict of interest in the outcome of the vote.

Based on our reading of Commission Rule 0720–1–.02(1), and fortified by the decision in *Mountain States*, we find that Mann had an affirmative duty to inform [8] the Commission of his conflict of interest and thereby recuse himself from the vote and proceedings. We further find under the record that Jackson–Madison's failure to petition the Commission for recusal did not constitute a waiver. We hold that Mann's participation in the initial September 1998 vote approving Methodist's CON application caused the vote be tainted in violation of the Commission's own conflict of interest rule, and therefore declare said vote void *ab initio*.

To summarize, we find that the ALJ correctly determined that Mann had a disqualifying conflict of interest. We further hold that the ALJ correctly interpreted Commission Rule 0720–1–.02(1) to place an affirmative duty on Mann to disclose his

conflict of interest and recuse himself from the vote and proceedings. Mann's participation in both votes, and his subsequent affirmance of the Attorney General's opinion and approval of the CON based on this opinion, render the CON awarded to Methodist null and void.

Accordingly, the order of the trial court is vacated, and the case is remanded to the Tennessee Health Facilities Commission for consideration of Methodist's CON application, consistent with this Opinion. Costs of the appeal are assessed one-half to Jackson–Madison County General Hospital District and its sureties, and one-half to Jackson Tennessee Hospital Company, L.L.C. d/b/a Regional Hospital of Jackson and its sureties.

---

**8.** Methodist contends that Jackson–Madison failed to make any showing "whatsoever that Commissioner Mann had any knowledge of SSI's business dealings with the parties at the time of the September 1998 vote on Methodist's CON." In light of the undisputed evidence that Methodist made purchases totaling nearly $405,093.00 from SSI for the period spanning 1997 through 1998, we are unable to conclude that Mann, as the Executive Vice President and one of the principle owners of SSI, had absolutely no knowledge of SSI's involvement with Methodist.