FILED
02/03/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 19, 2020 Session

## TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION v. THOMAS MARLIN ROBERTS ET AL.

**Appeal from the Chancery Court for Davidson County**
No. 19-558-II    Anne C. Martin, Chancellor
_____

**No. M2020-00388-COA-R3-CV**
_____

This appeal concerns the authority of an administrative judge when sitting with the Tennessee Underground Storage Tanks and Solid Waste Disposal Control Board during its review of an initial order in a contested case. In 2016, the Tennessee Department of Environment and Conservation issued an order pursuant to the Tennessee Petroleum Underground Storage Tank Act to recover funds spent for investigating and closing a petroleum site. The Department alleged that petroleum was released from three underground storage tanks on the respondents' property. The respondents filed a petition for review and sought a contested case hearing. Following the hearing before an administrative judge sitting alone, the administrative judge issued an initial order that upheld the assessment. The judge concluded that the respondents were "responsible parties" because they owned the site in 2010 when the tanks were removed. The respondents then filed a petition for appeal, seeking a review hearing before the Board. A different administrative judge was assigned to sit with the Board for the hearing. After the parties submitted their briefs but prior to the hearing, the second administrative judge issued an order independent of the Board that reversed several substantive rulings in the initial order and prohibited the Department from making certain legal arguments to the Board. Instead of proceeding with the review hearing, the Department obtained a stay from the Board to file a petition for judicial review to challenge the intermediate order issued by the second administrative judge. The trial court reversed the intermediate order, finding that *inter alia*, the administrative judge's decisions were "in excess of his authority and an abuse of discretion" because the statutory interpretation issue was a substantive matter for the Board to consider. The trial court also remanded the matter to the Board for a hearing with the burden of proof assigned to the respondents. This appeal followed. We respectfully disagree with the trial court's ruling as to the burden of proof because it is the duty of an administrative judge who "sits with" a Board to advise the Board on the applicable law. In all other respects, we affirm the judgment of the trial court and remand for further proceedings consistent with this opinion.

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which JOHN W.
MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

Steven G. Roberts, Collierville, Tennessee, for the appellants, Thomas Marlin Roberts and
Angela Roberts.

Elizabeth P. McCarter, Senior Assistant Attorney General, Nashville, Tennessee, for the
appellee, Tennessee Department of Environment and Conservation.

## OPINION

### FACTS AND PROCEDURAL HISTORY

The property at the center of this controversy is located in Millington, Tennessee
("the Property"). Thomas Marlin Roberts has operated a transmission-repair business on
the Property since 1997. After leasing the Property for three years, Mr. Roberts and his
wife, Angela Roberts (collectively, "the Roberts"), purchased the Property.

In 2010, while removing an old concrete slab from the Property, the Roberts
discovered and removed three rusted-out, 500-gallon storage tanks. While unearthing the
tanks, Mr. Roberts smelled diesel from the soil beneath the tanks, but he saw no leaking
petroleum products. After removing the tanks and surrounding soil,[1] Mr. Roberts covered
the area with concrete.

One year later, in August 2011, the Tennessee Department of Environment and
Conservation ("the Department") was notified of the tanks. The tanks were seized along
with the soil that Mr. Roberts dug up, and the Department began investigating the Property
for possible groundwater contamination. After discovering chemicals associated with
petroleum, the Department installed monitoring wells and conducted a cleanup. The
cleanup concluded in April 2012, and the tanks were destroyed in 2014.

In 2016, the Department issued a cost-recovery order against the Roberts to recoup
the $166,103.65 it spent for the investigation and cleanup. The Department made the
assessment pursuant to its authority in the Tennessee Petroleum Underground Storage Act
("the USTA"), Tenn. Code Ann. § 68-215-101 to -204, which allows the Department to
recover its expenses from any "responsible party." *Id*. § 115(a). Specifically, the

---

[1] Mr. Roberts moved the tanks and soil to his residential property.

Department asserted that the Roberts were "responsible part[ies]" because they were the "owner[s] . . . of a petroleum site."

## I. PETITION FOR REVIEW AND CONTESTED CASE HEARING

After receiving the cost-recovery order, the Roberts filed a petition for review, requesting a contested case hearing before the Underground Storage Tanks and Solid Waste Disposal Control Board ("the Board"). The Roberts argued, *inter alia*, that the Department lacked authority to issue the assessment under the USTA because § 68-215-102(c) of the statute states that it does not apply "retroactively to releases or other events that occurred prior to July 1, 1988." *See id*. § 102(c).

Administrative Judge Rachel Waterhouse conducted the contested case sitting alone and held an evidentiary hearing in June 2017. After the hearing, Judge Waterhouse concluded that the Department proved the tanks had been on the Property, were used to store petroleum substances, and were the source of the contamination. Consequently, the Roberts were "responsible part[ies]" as the "owner[s] . . . of a petroleum site."

Judge Waterhouse rejected the Roberts' argument that § 68-215-102(c) barred the assessment. She held that the Roberts had the burden of proving the release "occurred prior to July 1, 1988," because they had asserted the issue as an affirmative defense. Moreover, Judge Waterhouse found that a release "occurred" on the Property in 2010 "when Mr. Roberts smelled diesel/oil/petroleum while digging up the tanks on the [P]roperty." She reasoned that § 68-215-103(8) of the USTA defines "occurrence" as the "discovery of environmental contamination . . . , due to the release of petroleum products from petroleum underground storage tanks."

Based on these findings and conclusions of law, Judge Waterhouse issued an initial order upholding the Department's cost-recovery order and assessment.

## II. PETITION FOR APPEAL TO THE BOARD

After Judge Waterhouse entered her initial order, the Roberts filed a petition for appeal to the Board. The Roberts challenged, *inter alia*, Judge Waterhouse's interpretation of "responsible party" and her conclusion that a release had "occurred" when Mr. Roberts removed the tanks.

Administrative Judge Steve Darnell was assigned to sit with the Board during the appeal. On the day of but prior to the review hearing, Judge Darnell convened a conference outside the presence of the Board to discuss his proposed instructions for the Board. Contrary to Judge Waterhouse's ruling, Judge Darnell announced that he would instruct the Board that "owner . . . of a petroleum site" was limited to persons who own or owned an active petroleum storage tank and that the Department had the burden to prove the date

of the release. Moreover, Judge Darnell ruled that the Department could not argue for an alternative interpretation during the hearing. He explained his reasoning in a subsequent written order:

The following are the only provisions of the [USTA] relevant to [the Roberts] that the Board should be charged on:

1. T.C.A. § 68-215-115(a) is the only section of the [USTA] that authorizes the Commissioner to recover costs from a responsible party who is not covered by the fund. It provides in relevant part as follows:

Whenever the Commissioner expends money for the investigation, identification, containment or cleanup of a particular site under this part, the Commissioner may issue an order to any **responsible party**, . . . to recover the amount expended or to assess that party apportioned share of all costs expended or to be expended. . . .

2. T.C.A. § 68-215-103(17)(A)(i) defines a "**responsible party**" as "[t]he **owner** or operator of a petroleum site." There is no dispute [the Roberts] never operated a "petroleum site" making [the Roberts] only liable if they are an "owner" of a petroleum site.

3. T.C.A. § 68-215-103(10) defines "owner" as:

(A) For petroleum tanks in use or brought into use on or after November 8, 1984, any person who owns a petroleum underground storage tank used for the storage, use, or dispensing of petroleum products;

(B) For petroleum tanks used prior to November 8, 1984, but no longer in use after that date, the person who **last owned the petroleum underground storage tank** used for storage, use, or dispensing of petroleum immediately **before discontinuation of its use**. . . .

4. T.C.A. § 68-215-102(c) provides that "It is the intent of the general assembly that this chapter shall not apply retroactively to releases or other events that occurred prior to July 1, 1988." Therefore, [the Department] bears the burden of proving that a release occurred after July 1, 1988, in addition to proving [the Roberts] were the "owner" of

the tanks pursuant to § 68-215-103(10)(B). The [Roberts] do not bear the burden of proving a release occurred before July 1, 1988.

[The Department] will not be permitted to argue to the Board the applicability of statutes, rules, or case law that are not relevant to [the Roberts]' situation. Specifically, the statutory definition of "occurrence" in T.C.A. § 68-215-103(8) and the definition of "date of release" in the Board's Rule 0400-18-01-.01(4). . . . Neither is applicable here. [The Department] will not be permitted to argue the [USTA]'s legislative history to the Board as the statutory scheme is clear and unambiguous on its face.

(Emphasis in original) (footnotes omitted).

Instead of proceeding with the scheduled hearing, subject to the foregoing, the Department orally requested and received a continuance and stay from the Board to allow it to file a petition for judicial review of Judge Darnell's order.

III. PETITION FOR JUDICIAL REVIEW

In its petition for judicial review, the Department contended that Judge Darnell improperly substituted his judgment for that of the Board by deciding what law applied, assigning burdens of proof, and limiting the Department's legal arguments. The Roberts responded by arguing that Judge Darnell properly exercised his duties under the Uniform Administrative Procedures Act ("UAPA"), which allows administrative judges to decide questions of law. *See* Tenn. Code Ann. §§ 4-5-103(b) and -306(b).

Following a hearing, the trial court concluded that Judge Darnell's rulings did not fall within his authority under the UAPA. The court reasoned that the UAPA provides a more limited role for administrative judges when sitting with agency members than when sitting alone. The court explained, "[W]hile the [administrative judge] may advise the agency members as to the law of the case, and 'shall decide any procedural questions of law,' [Tenn. Code Ann. § 4-5-301(b)),] he is not charged with deciding the substantive legal issues brought before the agency for determination." The trial court also concluded that the definition of "responsible party" was a substantive matter; thus, Judge Darnell had no "authority to make [the] legal determinations that [were] at issue . . . and, in essence, pre-empt the Board's role." The court also disagreed with Judge Darnell's assignment of the burden of proof, finding that the Roberts had the burden of proof because they were the parties seeking relief.

Based on these and other findings, the trial court reversed and remanded the matter to the Board for an appeal review hearing with the burden of proof assigned to the Roberts and without any of the limiting instructions imposed by Judge Darnell. This appeal followed.

- 5 -

## ISSUES

The dispositive issue in this appeal is whether Judge Darnell, who was assigned to "sit with the Board" during the appeal, acted within or exceeded the authority granted to an administrative law judge under the USTA and the UAPA.[2]

## STANDARD OF REVIEW

Under Tenn. Code Ann. § 4-5-322(h), a court may reverse or modify an administrative decision if the findings, inferences, conclusions, or decisions are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority of the agency;

(3)     Made upon unlawful procedure;

(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

*Id.* § 322 (h). In making its determination, this court engages in a three-step analysis:

The court must first determine whether the agency has identified the appropriate legal principles applicable to the case. Then, the court must

---

[2] The Roberts frame their issues as follows:

1.    Whether the trial court erred in limiting the ALJ's role in a hearing before the Board.

2.    Whether the trial court erred in limiting the ALJ's authority to assign the burden of proof and rule that the "release" after July 1, 1988, was a statutory requirement to be established by the Department.

3.    Whether the trial court erred in finding that the ALJ's limitation on the Department's arguments was legally flawed and inconsistent with the statute.

The Department frames the issue as follows:

Does the trial court's decision reversing the Board administrative law judge's intermediate agency order, which reassigned the burden of proof and restricted the State's legal arguments at the review stage, contravene the review provisions under the UAPA or the Petroleum Underground Storage Tank Act?

examine the agency's factual findings to determine whether they are supported by substantial and material evidence. Finally, the reviewing court must examine how the agency applied the law to the facts. This step is, of course, a highly judgmental process involving mixed questions of law and fact, and great deference must be accorded to the agency. At this stage, the court must determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles.

*McEwen v. Tennessee Dep't of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005) (footnotes omitted) (citations omitted). The scope of review is the same in trial and appellate courts. *Methodist Healthcare-Jackson Hosp. v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 129 S.W.3d 57, 63 (Tenn. Ct. App. 2003).

## ANALYSIS

Deciding whether an administrative judge assigned to sit with the Board during an appeal hearing acted within or exceeded his authority under the USTA or the UAPA requires us to construe the language of each statute. When interpreting statutory language, "words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). When two statutes address the same subject, the statutes must read together "as to give the intended effect to both." *Coffee Cty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 845–46 (Tenn. 2019) (quoting *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)).

Judge Darnell cited Tenn. Code Ann. § 4-5-301 as the source of his authority to interpret the USTA and decide which party had the burden of proof. Section 4-5-301 sets forth how a contested case must be conducted, and it delineates the duties of an administrative judge:

It is the duty of the administrative judge or hearing officer to preside at the hearing, rule on questions of the admissibility of evidence, swear witnesses, **advise the agency members as to the law of the case**, and ensure that the proceedings are carried out in accordance with this chapter, other applicable law and the rules of the respective agency. At no time shall the administrative judge or hearing officer hearing a case with agency members . . . take part in the determination of a question of fact, unless the administrative judge or hearing officer is an agency member. An administrative judge or hearing officer shall, upon the judge's or the officer's own motion, or timely motion of a party, **decide any procedural question of law**.

Tenn. Code Ann. § 4-5-301(b) (emphasis added).

Admittedly, the controlling section of the USTA, Tenn. Code Ann. § 68-215-119(b), requires petitions challenging cost-recovery orders to be heard as contested cases by an administrative judge sitting alone in accordance with § 4-5-301. That same section, however, expressly delegates the responsibility of reviewing initial orders to **the Board**: "Upon appeal to the [B]oard by a party, . . . the [B]oard shall afford each party an opportunity to present briefs, shall review the record and allow each party an opportunity to present oral argument." *Id*.

As the UAPA makes clear, by the time a petition for review from an initial order is filed, the parties have had "a full opportunity to file pleadings, motions, objections, make offers of settlement, engage in discovery, and compel the attendance of witnesses by subpoena pursuant to the Tennessee Rules of Civil Procedure," as well as "present evidence, conduct cross-examination, and present rebuttal evidence." *See Tennessee Environmental Council, Inc.*, 254 S.W.3d at 406–07 (citations omitted). Significantly, it is during and leading up to the contested case evidentiary hearing that an administrative judge has wide-ranging authority. The role and scope of authority of an administrative judge during this stage of the proceedings are much like that of a trial judge who presides over a civil action.

On appeal, however, an administrative judge's duties under § 4-5-301(b) to "rule on questions of the admissibility of evidence [and] swear witnesses" are inapplicable. This is due to the fact the Board's review "shall be limited to the record." Tenn. Code Ann. § 68-215-119(b). Moreover, as the trial court correctly recognized, an administrative judge's duty to decide a question of law is implicitly limited because exercising that duty may infringe on responsibilities expressly delegated to agency members:

> [T]he [administrative judge's] role is to assist the agency members in their task, without intruding on their roles as the finders of fact. And while the ALJ may advise the agency members as to the law of the case, and "shall decide any procedural questions of law," [Tenn. Code Ann. § 4-5-301(b),] by implication, he is not charged with deciding the substantive legal issues brought before the agency for determination.
>
> .    .    .
>
> [Judge Darnell] was charged with instructing the Board on these legal issues. However, it is not [within his] authority to make legal determinations that are at issue here and, in essence, pre-empt the Board's role.

Additionally, neither § 4-5-301(b) nor § 68-215-119(b) gives an administrative judge the authority to limit a party's legal arguments to the Board. By doing so, Judge Darnell's order infringed not only on the Department's statutory right to present a brief and an oral argument expressing its legal theories—the purpose of which was to advocate the

- 8 -

correctness of Judge Waterhouse's rulings in the initial order—but also on the Board's responsibility to review the initial order and render a final order.

Nevertheless, the administrative judge's responsibility under § 4-5-301(b) to "advise the agency members as to the law of the case" is still relevant. Thus, Judge Darnell had the authority and duty to advise the Board on the law applicable to the case. He could, for example, advise the Board of his legal opinion that the Department had the burden of proof and that the statutory definition of "occurrence" at Tenn. Code Ann. § 68-215-103(8) and the definition of "date of release" in the Board's regulations at Tenn. Comp. R. & Regs. 0400-18-01-.01(4) were inapplicable. He could not, however, prevent the Department from advocating these legal theories.

It is the Board, after all, that is charged with rendering a final order that includes "conclusions of law [and] the policy reasons therfor." Tenn. Code Ann. § 4-5-314(c); *see* Tenn. Code Ann. § 68-215-119(b) ("In such appeals, the [B]oard shall thereafter render a final order, in accordance with § 4-5-314 . . . ."). As we have previously recognized, "[i]n Tennessee's administrative decision-making hierarchy, like the hierarchy in most states, the agencies remain superior to the hearing officers and administrative judges." *McEwan v. Tennessee Dep't of Safety*, 173 S.W.3d 815, 822 (Tenn. Ct. App. 2005) (citations omitted).

In summary, as the Department correctly states in its appellate brief, Judge Darnell's order exceeded the scope of his authority by preemptively "reviewing" several issues in the initial order:

Tennessee law recognizes the necessity of maintaining the proper allocation of judicial authority for trial and appellate proceedings. But the Roberts[] and [Judge Darnell] erroneously persist in conflating the concepts of evidentiary and review/appellate hearings when there is no statutory or common law authority for doing so . . . .

In issuing his intermediate Order of March 11, 2019, [Judge Darnell] exceeded his proper role in the administrative review process, which, at this stage, was not a contested case evidentiary hearing but a proceeding involving the Board's review of an initial order. By the time this matter was assigned to [Judge Darnell], the contested case hearing, an evidentiary proceeding with witnesses and exhibits, had already been held before a different [administrative judge] sitting alone in accordance with Tenn. Code Ann. §§ 4-5-301(a)(2) and 4-5-314(b).

Based on the foregoing analysis, we affirm the trial court's decision to remand the matter to the Board "without any of the limiting instructions imposed upon the Department" by Judge Darnell's order that pertains to the legal arguments the Department

chooses to make, including the definition of occurrence at Tenn. Code Ann. § 68-215-103(8) and the definition of date of release in Tenn. Comp. R. & Regs. 0400-18-01-.01(4). However, we respectfully disagree with the decision to remand the matter to the Board for a hearing "with the burden of proof assigned to the respondents." This is because Judge Darnell has the affirmative duty to advise the Board as to the law of the case. *See* Tenn. Code Ann. § 4-5-301(b). Precluding him from doing so would infringe on this duty. Thus, on remand, Judge Darnell may advise the Board as to which party has the burden of proof, then the parties may advocate to the Board why that advice is correct or incorrect.[3]

## IN CONCLUSION

The decision of the trial court is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Thomas and Angela Roberts.

_____
FRANK G. CLEMENT JR., P.J., M.S.

---

[3] Our decision should not be interpreted as holding that Judge Darnell's "advice" to the Board concerning the burden of proof is correct or incorrect. It is his duty to advise the Board on this issue, and he may or may not change his "advice" to the Board on remand. Whether the advice to the Board on remand, whatever it may be, is correct or incorrect is not at issue here.