IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 15, 2019 Session

## ANDERSON COUNTY TENNESSEE, ET AL. v. TENNESSEE STATE BOARD OF EQUALIZATION, ET AL.

**Appeal from the Chancery Court for Anderson County**
**No. 16CH8375      M. Nichole Cantrell, Chancellor**

_____

### No. E2018-00142-COA-R3-CV

_____

This appeal concerns the validity of an agreed order entered in a proceeding before the Tennessee Board of Equalization in a contested case between Anderson County, Tennessee, and Toyota Motor Manufacturing, Inc. The order purported to settle a dispute over the value of dies, jigs, and molds used for manufacturing automobile parts. The attorney for the Tennessee Comptroller's Division of Property Assessments, which intervened in the proceeding, signed the agreed order on behalf of Toyota and the Anderson County Property Assessor "with express permission" of both parties, two months later, the Assessor moved to set the order aside, asserting that he had not agreed to the settlement terms or given the attorney for the Division of Property Assessments permission to sign on his behalf. The administrative judge treated the motion as one for extraordinary relief under the guidance of Tennessee Rule of Civil Procedure 60.02 and held an evidentiary hearing. The administrative judge found the testimony of the Division of Property Assessment's attorney was more credible than that of the Anderson County Assessor and denied the motion. The County filed a petition for review with the Chancery Court and the trial court reversed the decision of the administrative law judge, finding that the documentary evidence gave more credibility to the Assessor's testimony. Considering the deference that reviewing courts must give to credibility determinations, we find no basis for reversing the administrative judge's decision to deny Anderson County's motion. Accordingly, we reverse the judgment of the trial court, and remand the case with instructions to remand the case to the Tennessee Board of Equalization for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and CHARLES D. SUSANO JR., JJ., joined.

Edmund Scott Sauer and Joseph Wesley Gibbs, Nashville, Tennessee, for the appellant, Toyota Motor Manufacturing, Kentucky.

Nicholas Jay Yeager, Clinton, Tennessee, for the appellees, Anderson County, Tennessee, and Anderson County Assessor of Property.

Mary Ellen Knack, Assistant Attorney General, Nashville, Tennessee, for the appellees, Tennessee State Board of Equalization and Assessment Appeals Commission.

## OPINION

### I. BACKGROUND

This case arose out of a dispute between Toyota Motor Manufacturing and Anderson County, Tennessee, over the taxable value of equipment acquired by Toyota Motor Manufacturing ("Toyota") to manufacture automobile parts in Anderson County ("the County"). Under the standard depreciation schedule in Tenn. Code Ann. § 67-5-903(f), Toyota's equipment would be valued at 75% of acquisition cost in year one, 50% of cost in year two, 25% of cost in year three, and 20% of cost in each year after that.

However, in accordance with § 67-5-902(a),[1] Toyota requested a nonstandard depreciation schedule each year from 2008 to 2012. Toyota believed the standard schedule resulted in an inflated value because the equipment was used to manufacture new automobile parts for only five to seven years. After that, the equipment was used for only service parts when needed. Each year Anderson County declined to adopt Toyota's proposed schedule, and each year Toyota appealed the valuation to the State Equalization Board. The Tennessee Comptroller's Division of Property Assessments intervened as an interested party. Meanwhile, Toyota paid the tax as assessed.

---

[1] Tenn. Code Ann. § 67-5-902(a) provides, in relevant part, as follows:

Unless otherwise provided for, those owners and lessees of taxable tangible personal property who are required by rules and regulations of the state board of equalization to report to the assessor shall report on such schedule as the state board of equalization may require. The schedule adopted by the board shall provide that a value different from standard depreciated cost may be used where such value more closely approximates fair market value, and the assessor may request supportive information in such instances from the taxpayer.

## II. SETTLEMENT NEGOTIATIONS

While Toyota's appeals were pending, Division of Property attorney John Allen brokered settlement discussions between Toyota and the Anderson County Property Assessor. In 2011, Toyota proposed a depreciation schedule that used the standard rates for the first seven years and 5% after that. The negotiations stalled, however, when a key Toyota employee retired.

In 2012, the County elected a new property assessor, John Alley ("the Assessor"). Shortly after that, Toyota restarted the negotiation process by proposing a revised depreciation schedule, under which its equipment would be valued at 5% of acquisition cost after only five years of use.[2] In early 2013, Mr. Allen forwarded copies of the original and revised schedules to the Assessor, stating that the previous assessor had approved the original schedule before he left office.

In March 2013, Mr. Allen notified Administrative Judge Brook Thompson, that Toyota and the County reached a settlement and would be submitting an agreed order. Later that day, Mr. Allen sent the Assessor an email, stating that Toyota's appeals for 2008 through 2012 would be settled using Toyota's 2011 proposed depreciation schedule.[3]

Accordingly, in early June 2013, Mr. Allen sent the Assessor a draft stipulation and agreed order. As proposed by Toyota in 2011, the draft provided that Toyota's equipment would be valued using the standard depreciation schedule for years one through seven and then at 5% each year after that. The order included a total value of equipment and calculated new assessments for each year:

| TAX YEAR | VALUE | ASSESSMENT |
|----------|-------|------------|
| 2008 | $2,753,586 | $826,076 |
| 2009 | $2,585,626 | $775,688 |
| 2010 | $2,717,056 | $815,117 |

---

[2] Toyota based its revised proposal on the fact that the majority of its equipment was used to manufacture parts for cars, which had model lives of only five years, as opposed to trucks, which had model lives of seven years.

[3] By this time, Toyota had also appealed its 2012 tax assessment.

- 3 -

| | | |
|---|---|---|
| 2011 | $2,381,308 | $714,392 |
| 2012 | $2,695,413 | $808,624 |

Mr. Allen asked the Assessor to review the draft and "make sure that the settled values and assessments conform to how we agreed to settle."

On the same day, Toyota sent a letter to the Assessor via Mr. Allen, requesting permission to appeal the 2013 valuation of its equipment directly to the State Equalization Board.[4] Toyota reminded the Assessor that the parties had "agreed to resolve" the appeals for 2008 through 2012 and notified him that Toyota seeking the same nonstandard depreciation schedule for 2013:

> The taxpayer appealed the assessment for the tax years 2008, 2009, 2010, 2011 and 2012. The parties have agreed to resolve those appeals. We prepared an Agreed Order and Stipulation that we have provided to John C. E. Allen, the attorney with the Comptroller's Office representing you in your capacity as Property Assessor for Anderson County.

> As set forth on the Tangible Personal Property Schedule filed by the taxpayer, the taxpayer valued the Property at a nonstandard value of $2,695,413, which is consistent with the settlement as agreed by the parties for the years 2008–2012.

Three weeks later, Mr. Allen signed the Agreed Order on behalf of Toyota's counsel and the Assessor "with express permission" and submitted it to Administrative Judge Thompson. Later that day, Mr. Allen sent the Assessor a file-stamped copy and notified the Assessor that official certificates of assessment would be issued within 75 days after the Agreed Order was entered.

Three days later, June 24, 2013, Judge Thompson signed and entered the Agreed Order, which included a signed Certificate of Service stating the Department of State mailed or otherwise transmitted a copy to the Assessor.

---

[4] If a taxpayer believes its property "has been assessed on the basis of an appraised value that is more than the fair market value," the taxpayer may file a complaint with the Anderson County Board of Equalization. Tenn. Code Ann. § 67-5-1407(a). In the alternative, owners of industrial and commercial tangible property may obtain consent from the Anderson County Assessor to appeal directly to the State Board of Equalization ("the State Board"). *Id*. § 1412(b)(2).

Fifteen days later, July 9, 2013, the Assessor sent Mr. Allen an email stating that the County would not accept Toyota's proposed valuation for the 2013 tax year. Although Toyota's 2013 valuation was based on the same nonstandard depreciation schedule used in the Agreed Order, the Assessor did raise any issue with the use of the nonstandard schedule for the 2008–2012 valuations.

On September 16, 2013, the State Board issued revised certificates of assessment for tax years 2008 through 2012 using the numbers provided in the Agreed Order. The Certificates noted that the matter was "[s]ettled pursuant to agreement between the parties" and were signed by the State Board's Executive Secretary, Kelsie Jones.

### III.    MOTIONS TO SET ASIDE

On September 22, 2013—nearly three months after Administrative Judge Thompson entered the Agreed Order—the County filed a motion with the State Board to set aside the Agreed Order. In an affidavit, the Assessor contended that he never agreed to the settlement and never gave Mr. Allen permission to sign the Assessor's name. Toyota opposed the motion and filed the affidavit of Joseph Gibbs, who represented Toyota during the negotiations. Mr. Gibbs stated that he had negotiated with Mr. Allen in good faith in the belief that Mr. Allen had authority to act on behalf of the Division of Property and the Assessor. Moreover, Toyota asserted that the State Board no longer had jurisdiction over the matter because the limitations period for appealing or otherwise seeking review of the Agreed Order had passed.

By this time, Administrative Judge Thompson had been replaced as the presiding judge with the State Board's Executive Secretary, Mr. Jones. As administrative judge, Mr. Jones construed the County's motion as one for extraordinary relief under Tenn. R. Civ. P. 60.02. Based on the pleadings and affidavits, however, Mr. Jones found the County did not sufficiently demonstrate "mistake, surprise, or excusable neglect," nor fraud or misconduct of an adverse party. Accordingly, Mr. Jones denied the County's motion.

Undeterred, the County filed a second Motion to Set Aside the Agreed Order on January 17, 2014. This time, Mr. Jones decided the allegations warranted an evidentiary hearing, which was eventually set for May 2016.

At the hearing, the Assessor testified that he never agreed to the settlement and never gave Mr. Allen permission to sign the Agreed Order on his behalf. The Assessor also asserted that he spoke with the State Board's Executive Secretary, Mr. Jones, about the Agreed Order after discovering that it had been entered. The Assessor's testimony was contradicted by that of Mr. Allen, who testified that the Assessor expressly approved the settlement and gave Mr. Allen permission to sign the Agreed Order via telephone.

The next month, June 2016, Mr. Jones entered an Initial Decision and Order. Mr. Jones held that the County failed to prove that the Assessor did not consent to the settlement or give permission for Mr. Allen to sign the Agreed Order. Mr. Jones reasoned that Mr. Allen's testimony was more credible than the Assessor's testimony:

> [Mr.] Allen's emails to [the Assessor] support Allen's contention that he made [the Assessor] fully aware of the pending settlement and the details of settlement. [The Assessor] inherited settlement discussions that had begun and neared fruition before he took office. [The Assessor] discussed with Allen and then rejected a counter-offer from Toyota. A long-awaited trial of the appeals was scheduled for March 5, 2013, and then postponed solely to accommodate finalization of a settlement.

> The [A]ssessor's failure to respond to multiple emails from Allen describing and circulating the Agreed Order and Stipulation prior to its entry, and the [A]ssessor's failure to respond after the Judge Thompson's office mailed the Agreed Order and Stipulation as entered, suggest the [A]ssessor knew or had reason to know of the settlement and failed for some reason to react.

> .  .  .

> The undersigned administrative judge finds the most likely conclusion from the evidence, is that [the Assessor] was aware of the settlement as entered but did not appreciate its revenue implications until later and sought to modify the settlement only when he did. In trying to recall conversations with Allen, [the Assessor] remembered opposing Toyota's requested modification in February 2013, and he also remembered opposing, in August 2013, a direct appeal and settlement for the later tax year 2013. Sandwiched between those discussions came the Agreed Order and Stipulation for 2008–2012. Allen recalls getting [the Assessor]'s permission to sign this document for the [A]ssessor, and despite [the Assessor]'s conflicting recollection, the absence of any written response to Allen's emails or Gibbs' letter suggests the [A]ssessor's recollection failed him. The [A]ssessor's contention, that [Mr. Allen] did not have his permission to sign the settlement on his behalf, is not supported by a preponderance of the evidence, much less by clear and convincing evidence.

The County did not object to Mr. Jones Initial Order, which became final on August 5, 2016.

- 6 -

## IV.    CHANCERY COURT PROCEEDINGS

In October 2016, the County filed a petition for judicial review in the Anderson County Chancery Court.  The County contended that the evidence did not support the State Board's decision and that Mr. Jones should have recused himself from the matter. Toyota filed a response and motion for summary judgment, once again arguing that the State Board lacked subject matter jurisdiction over the County's Motion to Set Aside.

After overruling Toyota's Motion for Summary Judgment, the court held a hearing at which counsel made presentations; on December 2017, the trial court entered a final order.  Regarding subject matter jurisdiction, the court found that the County filed its motion properly, and any issue with timing was effectively waived when the State Board determined that an evidentiary hearing was necessary.  But the court reversed the State Board's decision, concluding that Mr. Jones reached "an illogical decision and . . . resolv[ed] the case on a clearly erroneous assessment of the evidence."  The court reasoned there was no documentary evidence to show that the Assessor agreed to the settlement terms or gave Mr. Allen permission to sign the Assessor's name.  The court further found that the timing of emails between Mr. Allen and Assessor Alley contradicted Mr. Allen's testimony that he received Assessor Alley's permission over the telephone.

The trial court also held that Mr. Jones erred by failing to recuse himself as administrative judge.  The court noted that Tenn. Code Ann. § 4-5-317 required the County's motion to be heard by the same administrative judge that rendered the initial decision, and it found that Mr. Jones violated Rules of Judicial Conduct 2.11(a)(1) and 6(b) because he had personal knowledge of the facts that were in dispute as Executive Secretary for the State Board.  Accordingly, the court set aside the Agreed Order and remanded the matter for further proceedings.  This appeal followed.

Toyota's appeal presents three issues: (1) whether the trial court erred in its denial of Toyota's Motion for Summary Judgment when the County failed to seek relief from the Agreed Order within the limitation periods; (3) whether the trial court applied the incorrect standard of review to the State Board's decision by reweighing the evidence; and (3) whether the trial court erred by concluding that the administrative law judge should have recused himself.

## ANALYSIS

### I.    SUBJECT MATTER JURISDICTION

Toyota argues that it was entitled to summary judgment as a matter of law because the Assessor knew about the Agreed Order but did not seek relief until after the State

Board lost subject matter jurisdiction. Thus, Toyota asserts that all subsequent proceedings and orders were void. We respectfully disagree.

"Subject matter jurisdiction concerns a court's 'lawful authority to adjudicate a controversy brought before it' and is conferred on a court by statute or the constitution." *Griffin v. Campbell Clinic, P.A.*, 439 S.W.3d 899, 902 (Tenn. 2014). "Whether a trial court has subject matter jurisdiction over a case is a question of law that we review de novo with no presumption of correctness." *Furlough v. Spherion Atl. Workforce, LLC*, 397 S.W.3d 114, 122 (Tenn. 2013).

The Tennessee General Assembly has conferred to the State Board jurisdiction "over the valuation, classification and assessment of all properties in the state." Tenn. Code Ann. § 67-5-1501. As authorized, the State Board has delegated to the Appeals Assessment Commission authority to hear taxpayer appeals. *See id*. § 1502. The State Board may also appoint an administrative judge to conduct a hearing and recommend proposed findings of fact and conclusions. *See id*. § 1505(a) and (c). The State Board's enabling legislation provides several avenues for appealing or otherwise contesting the orders of an administrative judge, the Appeals Assessment Commission, or the State Board itself. *See, e.g., id*. § 1501(c) (providing a thirty-day period to appeal an administrative judge's initial order).

It is undisputed that Anderson County did not pursue any of these statutory remedies within the prescribed limits. Instead, the County moved for extraordinary relief from the State Board's final judgment due to mistake or fraud.

According to the Uniform Rules of Procedure for Hearing Contested Cases Before State Administrative Agencies, administrative agencies may look to the Tennessee Rules of Civil Procedure for guidance in determining the procedure to following in situations not otherwise addressed by the Uniform Rules. *Yokley v. State Bd. of Educ.*, 305 S.W.3d 523, 526 (Tenn. Ct. App. 2009) (citing Tenn. Comp. R. & Regs. 1360-4-01-.01(3) (2004)). We have interpreted this provision as permitting the Board of Equalization to consider a motion for relief from a final judgment under the guidance of Tenn. R. Civ. P. 60.02. *See Madison Cty. v. Tennessee State Bd. of Equalization*, No. W2007-01121-COA-R3-CV, 2008 WL 2200050, at *2 (Tenn. Ct. App. May 27, 2008) (reviewing State Board judgment on motion for relief from a final judgment under the guidance of Rule 60.02); *cf. Alman Const. Co. v. Tennessee Dep't of Labor*, No. 01-A-019111-CH00420, 1992 WL 151434, at *5 (Tenn. Ct. App. July 2, 1992) (concluding administrative agency had jurisdiction to consider motions under Tenn. R. Civ. P. 60.02 after an order became final).

"Rule 60.02 motions follow the general rule that expiration of a limitations period does not deprive the court of jurisdiction." *Levitt, Hamilton, & Rothstein, LLC v. Asfour*, 587 S.W.3d 1, 9 (Tenn. Ct. App. 2019).[5] Accordingly, when a consent decree is entered without the consent of both parties, relief may be obtained pursuant to Tenn. R. Civ. P. 60.02. *See McNeese v. Williams*, No. M2015-01037-COA-R3-CV, 2016 WL 937168, at *5 (Tenn. Ct. App. Mar. 10, 2016) (concluding that relief under Rule 60.02(5) was appropriate when an "agreed order" was entered by the trial court without the consent of both parties).

Accordingly, we find no error in the State Board's consideration of the County's Motion to Set Aside or the trial court's decision that it had subject matter jurisdiction.[6]

## II.    RECUSAL OF JUDGE JONES

Having determined that the State Board and trial court had subject matter jurisdiction, we next consider whether the administrative judge, Mr. Jones, had a non-waivable conflict of interest. The trial court held that Mr. Jones should have recused himself under Tenn. Code Ann. § 4-5-317 and Rules of Judicial Conduct 2.11(a) and 6(b) due to Mr. Jones' involvement as Executive Secretary of the State Board. We disagree with the court's holding for three reasons.

First, Tenn. Code Ann. § 4-5-317 applies to petitions for reconsideration filed "within fifteen (15) days after entry of an initial or final order." As noted, it is undisputed that the County did not seek reconsideration of the Agreed Order within

---

[5] Rule 60.02 motions alleging mistake, inadvertence, surprise, excusable neglect, fraud, misrepresentation, or other misconduct of the adverse party, must be made "within a reasonable time, and . . . not more than one year after the judgment, order or proceeding was entered or taken." Whether a Rule 60.02 motion was filed "within a reasonable time" is a question of fact. *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001) (citing *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990)). Toyota has not raised the issue of whether the facts establish an unreasonable delay under Rule 60.02.

[6] Toyota also contends that the trial court failed to comply with Tenn. R. Civ. P. 52.01 when ruling on Toyota's Motion for Summary Judgment because the court did not make sufficient findings of fact or conclusions of law. We need not address this issue, however, because Toyota's Motion for Summary Judgment was predicated on the same subject matter jurisdiction argument that the trial court rejected in its final order. Although trial court based its decision on a finding of waiver, we "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *Lewis v. NewsChannel 5 Network, L.P.*, 238 S.W.3d 270, 302 n.31 (Tenn. Ct. App. 2007) (citations omitted).

fifteen days. Instead, the County sought extraordinary relief under the guidance of Tenn. R. Civ. P. 60.02. Thus, Tenn. Code Ann. § 4-5-317 does not apply to the present matter.

Second, the County had the affirmative burden of seeking disqualification at the administrative level. Tennessee's Code of Judicial Conduct does not apply directly to administrative judges. *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 160 (Tenn. 2013). Nonetheless, the UAPA implicitly incorporates the Code of Judicial Conduct in Tenn. Code Ann. § 4-5-302(a), which provides, "Any administrative judge, hearing officer or agency member shall be subject to disqualification for bias, prejudice, interest or any other cause provided in this chapter or for any cause for which a judge may be disqualified." However, the UAPA also requires disqualification to be sought "after receipt of notice indicating that the individual will serve or, if later, promptly upon discovering facts establishing grounds for disqualification." Tenn. Code Ann. § 4-5-302(b). Thus, the parties to an administrative action have the affirmative burden of seeking disqualification. *See Methodist Healthcare-Jackson Hosp. v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 129 S.W.3d 57, 72 (Tenn. Ct. App. 2003) (contrasting an agency rule that placed "the mandatory duty of disclosure and recusal on the Commission member" with Tenn. Code Ann. § 4-5-302(b), which "provides only that an aggrieved party 'may' petition for disqualification"). Failure to comply with the requirements of § 302(b) results in waiver. *See Cox v. Tennessee Bd. of Veterinary Med. Examiners*, No. M2010-01582-COA-R3-CV, 2011 WL 5043380, at *11 (Tenn. Ct. App. Oct. 21, 2011) (holding that party's failure to seek disqualification of board members during the contested case rendered his argument untimely on appeal).[7]

Before the 2016 evidentiary hearing, the County had ample notice that Mr. Jones signed the 2013 certificates of assessment in his capacity of Executive Secretary of the Equalization Board and was presiding over the Motion to Set Aside. But the County failed to raise Mr. Jones's purported conflict of interest until its appeal to the trial court. Thus, we conclude that the County waived its objection.

Third, even if the County had not waived the issue, we find its arguments are without merit. "The burden of establishing a disqualifying interest rests on the party seeking disqualification." *Moncier*, 406 S.W.3d at 161 (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982)). The burden of proof for disqualifying an administrative officer is

---

[7] In *Malone & Hyde, Inc., Southaven Div. v. Tennessee Dep't of Revenue*, this court found § 4-5-302 could not be waived when the administrative judge was sitting "on a case in which his superior [was] a participant." No. 01-A-01-9302-CH00056, 1993 WL 295023, at *1 (Tenn. Ct. App. Aug. 4, 1993). There are no similar circumstances in this case.

higher than that for disqualifying a judicial officer. "For purposes of constitutional due process . . . administrative adjudicators are afforded a presumption of honesty and integrity." *Moncier*, 406 S.W.3d at 161; *c.f. Tennessee Cable Television Ass'n v. Tennessee Pub. Serv. Comm'n*, 844 S.W.2d 151, 165 (Tenn. Ct. App. 1992) ("[P]ersons seeking to disqualify an agency member from a rulemaking proceeding must support their motion by clear and convincing evidence." (citing *Ass'n of Nat. Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151, 1170 (D.C. Cir. 1979))).

In its brief to this court, the County materially misrepresented the evidence of the Assessor's interactions with Mr. Jones, insinuating that Mr. Jones prejudged the matter:

> [W]hen Assessor Alley first noticed his fictitious signature on the Agreed Order[,] he called both Attorney Allen and Secretary Jones and adamantly expressed his concerns about the signing of his name without permission. Despite his best efforts to communicate his lack of agreement to the terms and his concerns about Attorney Allen signing his name, both Allen and Secretary Jones disregarded Assessor Alley's concerns and pretended the agreement was valid.

The Assessor's testimony, however, was equivocal on whether, when, and on what subject he spoke with Mr. Jones:

Q. Who did you talk to at the State Board?

A. Mr. Jones and maybe Bobby Lee at the time. I don't know who was—I don't know who I—and then, of course, [the County Attorney] first and then—

Q. When you spoke—when you called, did you speak directly with Mr. Kelsey Jones?

A. I believe so.

Q. And what did you discuss?

A. I don't—I don't directly recall. It was about the whole timely filing of the deal.

Q. And did you tell him that you had never consented—

A. Uh-huh.

Q. —to this? In September, you told Mr. Jones that?

- 11 -

A.     No. I didn't say what month. I don't remember if the time frame is after I got that, I'm sure. I wouldn't have called prior.

This testimony does not establish that the Assessor "adamantly expressed his concerns" to Mr. Jones, much less that Mr. Jones "disregarded" the Assessor's concerns or "pretended the agreement was valid." Thus, the County's evidence falls far short of rebutting the presumption that Mr. Jones carried out his duties with honesty and integrity.[8]

### III.     THE STATE BOARD'S DENIAL OF THE COUNTY'S MOTION

Finally, Toyota contends that the trial court erred by finding the evidence in the administrative record did not support the State Board's decision to deny the County's motion to set aside the agreed order. On this point, we agree.

As an initial matter, the parties assert conflicting standards apply to this court's review. The County cited to Tenn. Code Ann. § 67-5-1511 as authority for its petition for judicial review to the chancery court. Review of final actions under § 67-5-1511 is conducted pursuant to a *de novo* standard of review. *Richardson v. Tennessee Assessment Appeals Comm'n*, 828 S.W.2d 403, 406 (Tenn. Ct. App. 1991). The County contends the State Board's denial of the Motion to Set Aside was a "final action" under § 67-5-1511 because the State Board's decision "affirmed the Agreed Order at issue[,] which in essence is the final ruling on the merits."

Again, the County's Motion to Set Aside did not challenge the merits of the Agreed Order directly. The Motion to Set Aside was a motion for extraordinary relief based on an allegedly fraudulent act that, if proven, would invalidate the order's validity. *See McNeese*, 2016 WL 937168, at *5 (explaining that, without the consent of both parties, a court has no power to enter an agreed order because "a consent judgment does not represent the reasoned decision of the court but is merely the agreement of the parties, made a matter of record by the court"). A Rule 60.02 motion does not affect the finality of the judgment. Tenn. R. Civ. P. 60.02. Nor does it "toll the time for taking an appeal." *Wells Fargo Bank, N.A. v. Dorris*, 556 S.W.3d 745, 751 (Tenn. Ct. App. 2017); *see* Tenn. R. Civ. P. 59.01 (stating that motions under Rules 50.02, 52.02, 59.07, and 59.04 "are the

---

[8] Although Toyota claims that the County expressly waived the alleged conflict of interest during the administrative hearing, we also find this is without merit. The County's express waiver during the administrative hearing was limited to Mr. Jones's disclosure that he once referred a family member to the firm representing Toyota. No discussion was held during the hearing about Mr. Jones's role as Executive Secretary of the State Board.

- 12 -

only motions contemplated in these rules for extending the time for taking steps in the regular appellate process"). Thus, the State Board's denial of the County's Motion to Set Aside was not a "final ruling on the merits" as asserted by the County.

Accordingly, the County's petition for judicial review was subject to the usual standard for judicial review of administrative decisions in Tenn. Code Ann. § 4-5-322(h). *See Madison Cty.*, 2008 WL 2200050, at *3 (reviewing agency decision on Rule 60.02 motion under the UAPA). Under Tenn. Code Ann. § 4-5-322(h), a court may reverse or modify an administrative board's ruling if the board's findings, inferences, conclusion, or decisions are:

(1)    In violation of constitutional or statutory provisions;

(2)    In excess of the statutory authority of the agency;

(3)    Made upon unlawful procedure;

(4)    Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

*Id*. § 322(h). In making its determination, this court engages in a three-step analysis:

> The court must first determine whether the agency has identified the appropriate legal principles applicable to the case. Then, the court must examine the agency's factual findings to determine whether they are supported by substantial and material evidence. Finally, the reviewing court must examine how the agency applied the law to the facts. This step is, of course, a highly judgmental process involving mixed questions of law and fact, and great deference must be accorded to the agency. At this stage, the court must determine whether a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles.

*McEwen v. Tennessee Dep't of Safety*, 173 S.W.3d 815, 820 (Tenn. Ct. App. 2005) (footnotes omitted) (citations omitted). The scope of review is the same for the trial court. *Methodist Healthcare-Jackson Hosp. v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 129 S.W.3d 57, 63 (Tenn. Ct. App. 2003).

Here, the gravamen of the County's petition for judicial review was that the evidence did not support the administrative judge's findings that the Assessor had agreed to the settlement and given permission for Mr. Allen to sign the Agreed Order on his

- 13 -

behalf. The trial court agreed, finding that the documentary evidence, or lack thereof, gave more credibility to the Assessor's testimony.

However, "[w]hen [an] agency conducts a hearing and can evaluate the witnesses as they testify, this Court gives the tribunal's credibility determinations great weight." *City of Memphis v. Civil Serv. Comm'n*, 239 S.W.3d 202, 208 (Tenn. Ct. App. 2007) (citing *Pruitt v. City of Memphis*, No. W2004-01771-COA-R3-CV, 2005 WL 2043542, at *7 (Tenn. Ct. App. Aug. 24, 2005)). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Moreover, "the substantial and material evidence standard does not justify reversal of an administrative decision only because the evidence could also support another result." *City of Memphis*, 239 S.W.3d at 208 (citing *Martin v. Sizemore*, 78 S.W.3d 249, 276 (Tenn. Ct. App. 2001)).

The administrative judge found that the Assessor and Mr. Allen "contradicted one another[,] but other circumstances to which they testified len[t] more credibility to Mr. Allen's version of events." The judge found that the Assessor was "fully aware of the pending settlement and the details of settlement," engaged in the negotiating process, received the Agreed Order after it was entered, negotiated with Mr. Allen on whether to apply the same terms to the 2013 tax year, and made no written objection to the settlement until after it was certified as final. These facts, combined with Mr. Allen's testimony that he received the Assessor's approval, led the administrative judge to conclude that the County failed to show by clear and convincing evidence that the Assessor did not approve the terms or give Mr. Allen permission to sign the Agreed Order.

The trial court, on the other hand, when reviewing the transcript of the hearing, gave greater weight to the Assessor's testimony and focused on the lack of documentary evidence supporting Mr. Allen's testimony. In its analysis, the court pointed out that Mr. Allen took action during the settlement proceedings before seeking permission from the Assessor on two different occasions, and Mr. Allen did not include the Assessor when emailing with Toyota about revisions to the Agreed Order. The court discounted Mr. Allen's testimony about receiving permission to sign the Agreed Order because the Assessor "did not indicate that any telephone conversation took place between Mr. Allen and himself," and there was no "record of such a telephone call taking place."

Although the trial court identified evidence that could support another result, as noted above, we are obliged to afford great deference to the agency's decision. The administrative judge had the opportunity to observe both witnesses and make the all-important assessment of credibility; the judge's opinion demonstrated a reasoned discussion of the conflicting evidence. The judge had substantial and material evidence

- 14 -

for the decision, and "a reasoning mind could reasonably have reached the conclusion reached by the agency, consistent with a proper application of the controlling legal principles." *McEwen*, 173 S.W.3d at 820. We find no reason to set aside the administrative judge's denial of the County's Rule 60.02 motion.

## IN CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court, and remand the case to the trial court with instructions to remand it to the State Board of Equalization for further proceedings consistent with this opinion.

_____

RICHARD H. DINKINS, J.